**Paula BRASHEAR, Individually and as Executor of the Estate of Dorothy Lorene Williams, Deceased, Appellant**

v.

**VICTORIA GARDENS OF McKINNEY, L.L.C. d/b/a Homestead of McKinney and Lisa Mauer, Appellees.**

No. 05–07–01269–CV.

Court of Appeals of Texas, Dallas.

Dec. 16, 2009.

---

Thomas B. Cowart, Dallas, TX, for Appellant.

Deanna Dean Smith, Marvin C. Moos, Ebanks, Smith & Carlson, L.L.P., Houston, TX, Thomas B. Alleman, Winstead, Sechrest & Minick, P.C., Dallas, TX, for Appellees.

Before Justices MOSELEY, FITZGERALD, and FILLMORE.[1]

## OPINION ON REHEARING

Opinion By Justice FILLMORE.

Appellant Paula Brashear filed a motion for rehearing. We overrule the motion for rehearing. On our own motion, we withdraw our opinion issued February 10, 2009 and vacate our judgment of that date. The following is now the opinion of the Court.

Brashear sued several defendants for damages based on allegations that they neglected her mother, a nursing home resident. At that time, one of the defendants was a debtor in bankruptcy. The trial court later dismissed the case for want of prosecution. We conclude that the entire lawsuit was subject to the automatic stay imposed by § 362 of the bankruptcy code *ab initio*, and that the trial court never acquired jurisdiction over the case. We reverse and remand with instructions that the trial court dismiss the case for lack of subject-matter jurisdiction.

### I. PROCEDURAL HISTORY

Appellant Brashear filed this lawsuit in February 2001. She sued five defendants:

---

1. The Honorable Amos L. Mazzant was a member of the original panel and participated in the original decision in this case. Since the original decision, Justice Mazzant has accepted appointment as a United States Magistrate Judge and did not participate in this decision on rehearing. Pursuant to the Court's operating rules, Justice Robert M. Fillmore, as Justice Mazzant's successor, participated in the decision on rehearing.

appellees Victoria Gardens of McKinney, L.L.C. and Lisa Mauer, plus RainTree Healthcare Corporation, Stephen J. Wolf, and Eddie Haggard. RainTree promptly filed a suggestion of bankruptcy and plea in abatement, along with attached documentation showing that it had filed its bankruptcy case under Chapter 11 of the bankruptcy code[2] in February 2000. RainTree later filed an additional motion with the trial court seeking enforcement of the automatic bankruptcy stay imposed by § 362 of the bankruptcy code. *See generally* 11 U.S.C.A. § 362 (West 2004 & Supp. 2009). In July 2002, the trial court dismissed the case for want of prosecution. Brashear moved to reinstate, and she submitted an "Agreed Order to Stay Litigation" with her motion. The order was signed "Agreed as to Form" by counsel for all parties. The trial judge signed both the agreed stay order and a separate order reinstating and staying the case. In both orders, the judge stayed the case "pursuant to 11 U.S.C. § 362 until further order of this Court."

In September 2004, the trial court sent a notice that the case would be dismissed for want of prosecution absent certain action from the parties, and the court dismissed the case for want of prosecution on October 27, 2004. The trial judge then signed an "Agreed Order of Dismissal with Prejudice as to Defendant RainTree Only" on January 20, 2005. The clerk's record reflects no activity between these two dismissal orders.

Brashear filed a verified motion to reinstate the case on February 2, 2006. It appears that the motion was heard but never ruled upon by written order. The record contains uncontradicted evidence that RainTree's bankruptcy closed on August 17, 2007. On September 15, 2007, Brashear filed by mail both a duplicate of her 2006 motion to reinstate and a notice of appeal from the October 2004 dismissal for want of prosecution. The trial court denied the motion to reinstate by order signed on November 20, 2007.

On appeal, Brashear complains of the October 27, 2004 dismissal order only as to defendants Victoria Gardens and Lisa Mauer.

## II. APPELLATE JURISDICTION

### A. Summary of the issue

The trial court's dismissal order of October 27, 2004 purported to dispose of all parties and claims. Accordingly, that order was, on its face, a final, appealable order, and Brashear's September 15, 2007 notice of appeal appears to be untimely. *See generally* TEX.R.APP. P. 26.1 (setting forth deadlines for appeal in civil cases). Because a timely notice of appeal is a jurisdictional prerequisite, *Raulston v. Progressive Ins. Co.*, 115 S.W.3d 803, 804 (Tex.App.-Dallas 2003, no pet.) (per curiam), we questioned our jurisdiction over this appeal and solicited letter briefs from the parties directed to that issue. The parties filed letter briefs, and Brashear also addresses this Court's jurisdiction in the third of her three issues on appeal.

Brashear argues that federal bankruptcy law, specifically 11 U.S.C. § 108(c), tolled her deadline to appeal until at least thirty days after August 17, 2007, when RainTree's bankruptcy closed. *See* 11 U.S.C.A. § 108(c) (West 2004 & Supp. 2009). Thus, she contends, her September 15, 2007 notice of appeal was timely. Alternatively, she contends that the October 2004 dismissal order was void and that we have jurisdiction to determine that it is void. Appellees disagree with Brashear,

2. 11 U.S.C.A. §§ 1101–74 (West 2004 & Supp.2009).

and Mauer has included a motion to dismiss this appeal in her appellate brief.

Appellate jurisdiction is never presumed. Unless the record affirmatively shows the propriety of appellate jurisdiction, we must dismiss. *Stegall v. Cameron*, 601 S.W.2d 771, 773 (Tex.Civ.App.-Dallas 1980, writ dism'd); *accord Parks v. DeWitt County Elec. Coop., Inc.*, 112 S.W.3d 157, 160 (Tex.App.-Corpus Christi 2003, no pet.).

## B. Judgment finality

 The first question we must answer is when the judgment in this case became final, triggering Brashear's appellate deadlines. Ordinarily a judgment is final for appellate-deadline purposes when it disposes of all claims and all parties left in the lawsuit. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). On its face, the trial court's October 27, 2004 dismissal order disposed of all claims and all parties by dismissing the case for want of prosecution. Unless some other principle of law modifies our usual rules of judgment finality, the dismissal order was a final judgment that triggered Brashear's appellate deadlines, and Brashear's September 2007 notice of appeal was filed too late.

 Brashear mounts an argument that the October 27, 2004 dismissal order was interlocutory because it was rendered in violation of the automatic bankruptcy stay. Brashear contends that the automatic stay applied as to all of her claims against all defendants, but secondarily she argues that the stay applied at minimum to her claims against the bankrupt debtor, RainTree. Actions taken in violation of the automatic stay are void. *Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988) (per curiam); *Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex. App.-Dallas 2007, pet. denied). Thus, she

concludes, the order was interlocutory because it did not validly dispose of all of her claims. The dismissal remained interlocutory, in her view, until RainTree's bankruptcy closed in August 2007, thus making her appeal timely. We cannot agree with this logic, whereby the finality of an order depends on its validity. "Even void orders must be timely appealed." *Standifer v. Cepeda*, No. 05–05–00725–CV, 2005 WL 2212291, at *1 (Tex.App.-Dallas Sept. 13, 2005, no pet.) (mem. op.); *accord In re Estate of Courvier*, No. 04–07–00469–CV, 2007 WL 2935809, at *1 (Tex.App.-San Antonio Oct. 10, 2007, no pet.) (mem. op.); *see also Kenseth v. Dallas County*, 126 S.W.3d 584, 596–97 (Tex.App.-Dallas 2004, pet. denied).

We conclude that the October 27, 2004 dismissal order was a final judgment, and that the order started Brashear's appellate timetable under our state rules of procedure. We next inquire whether federal bankruptcy law supersedes that state law on the facts of this case.

## C. Whether the bankruptcy code extended Brashear's appellate deadline

### 1. Applicable law

 The automatic stay imposed by § 362 of the bankruptcy code does not extend or toll any appellate deadlines by its own effect. *See, e.g., Bashaw v. State*, No. 03–05–00745–CV, 2007 WL 1518063, at *2 (Tex.App.-Austin May 25, 2007, no pet.) (mem. op.); *Burrhus v. M & S Mach. & Supply Co.*, 897 S.W.2d 871, 873 (Tex.App.-San Antonio 1995, no writ); *Raley v. Lile*, 861 S.W.2d 102, 105 (Tex.App.-Waco 1993, writ denied). Yet, it bars the filing of a notice of appeal in an action against a debtor in bankruptcy because that would constitute a continuation of the action. *See* 11 U.S.C.A. § 362(a)(1) (West 2004 &

Supp.2009); *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 329 F.3d 948, 953 (8th Cir.2003) ("[T]he filing of the notice of appeal in state court is one aspect of a continuation of a judicial 'proceeding against a debtor,' and thus stayed by § 362(a)(1)[.]").

■ Section 108(c) of the bankruptcy code, however, affords an extension of state-court deadlines under some circumstances. That section provides, in pertinent part:

> [I]f applicable nonbankruptcy law … fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor … and such period has not expired before the date of the filing of the [bankruptcy] petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C.A. § 108(c). The purpose of § 108(c) is to protect a creditor from losing rights because an automatic bankruptcy stay blocks it from commencing suit against the debtor within the statute of limitations or from complying with some other deadline after suit has been commenced. *See Morton v. Nat'l Bank (In re Morton)*, 866 F.2d 561, 566–67 (2d Cir. 1989). When applicable, § 108(c) extends certain deadlines for thirty days after notice of the termination of a bankruptcy stay. *Gantt v. Gantt*, 208 S.W.3d 27, 30–31 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

**2. Application of the bankruptcy code to the facts**

■ The question presented is whether § 108(c) applied in this case to extend Brashear's appellate deadlines as to her claims against appellees. At the outset, we reject Victoria Gardens' argument that Brashear lacks standing to mount an argument based on § 108(c). Victoria Gardens contends that the debtor is the only party who has standing to invoke the automatic stay. *See Lisanti v. Dixon*, 147 S.W.3d 638, 642 (Tex.App.-Dallas 2004, pet. denied) ("The stay, however, is for the benefit of the debtor, and nonbankrupt parties cannot use the stay to their advantage."). As discussed above, however, Brashear seeks aid from § 108(c), not directly from the automatic stay itself. Section 108(c) clearly is intended for the benefit of creditors like Brashear, and we conclude that she has standing to invoke it. *See Howard v. Howard*, 670 S.W.2d 737, 739–40 (Tex. App.-San Antonio 1984, no writ) (section 108(c) extended deadline for creditor to file motion for new trial against debtor).

■ Section 108(c) is challenging to apply in the instant case because the case involves a mix of debtor and nondebtor defendants. The statute applies to deadlines in "a civil action in a court other than a bankruptcy court on a claim against the debtor." 11 U.S.C.A. § 108(c). It seems that Brashear's lawsuit fits this description, as it is undisputed that RainTree was a debtor in bankruptcy when Brashear filed it. The more difficult question is whether § 108(c) extended Brashear's notice-of-appeal deadline with respect to all the defendants in the case, or only with respect to Brashear's claims against Rain-Tree.

There is little authority on point, but we have found two cases holding that § 108(c) did not extend a claimant's deadlines with respect to a bankrupt debtor's co-obligors.

In one case decided by the Fifth Circuit, the plaintiff sued Texaco, Inc., which was in bankruptcy at the time, and two other nonbankrupt defendants including a Texaco subsidiary called TRMI. *Powers v. Texaco, Inc.,* No. 93–7322, 1994 WL 199075, at *1, 2 (5th Cir. May 11, 1994) (per curiam). In response to a limitations defense, the plaintiff argued that Texaco's bankruptcy saved his claims by virtue of § 108(c). *Id.* at *2. The trial court granted summary judgment against the plaintiff based on limitations, and the court of appeals affirmed, holding that § 108(c) did not apply to the plaintiff's claims against the codefendants:

> Section 108 of the Code must be read in conjunction with § 362. Section 108 tolls limitations for filing a claim against a debtor until 30 days after the expiration of the automatic stay under § 362. Both provisions relate to "the debtor." . . . Section 362 does not operate as an automatic stay against the codefendants of the debtor. . . . It would make no sense, therefore, to apply the tolling provision of § 108 to such codefendants.

*Id.* at *3. Accordingly, the court held that the limitations deadline for plaintiff's claims against the codefendants was not extended by § 108(c). *Id.*

The Houston Fourteenth Court of Appeals relied on logic much like the Fifth Circuit's in *Houston Milk Producers Federal Credit Union v. Simmons,* No. A14–91–01051–CV, 1992 WL 45801 (Tex.App.-Houston [14th Dist.] March 12, 1992, writ denied) (not designated for publication). Simmons was one of three co-makers of a note in favor of the credit union. *Id.* at *1. After the note went into default, another co-maker died, and the co-maker's wife and community estate went into bankruptcy. *Id.* The credit union then sued Simmons on the note more than four years after the default but within thirty days after the bankruptcy stay was lifted. *Id.* Simmons won summary judgment based on limitations, and the court of appeals affirmed, concluding that § 108(c) did not extend limitations as to Simmons because the automatic stay did not bar the credit union's claim against Simmons as a mere co-debtor on the note. *Id.* at *1–2.

Both *Powers* and *Houston Milk Producers* refused to extend § 108(c) to claims against nonbankrupt co-obligors after concluding that the claims against the co-obligors were not affected by the automatic stay. In the instant case, however, Brashear contends that RainTree's automatic stay applied in favor of all of Rain-Tree's nondebtor codefendants as well. If the automatic stay barred Brashear's claims against Victoria Gardens and Mauer from going forward, this still would not bring them within the statutory definition of "debtor," the word used in § 108(c). *See* 11 U.S.C.A. § 101(13) (defining "debtor" as a person or municipality concerning which a case under the bankruptcy code has been commenced). But the purpose of § 108(c) is to guarantee fairness to creditors who are blocked from prosecuting their claims because of the automatic stay. *See In re Morton,* 866 F.2d at 566–67. If the automatic stay bars a creditor from proceeding against a nondebtor in a particular case, it would be irrational and unjust not to extend the benefit of § 108(c) to that creditor. *See Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966) (eschewing statutory interpretations that lead futile, absurd, or unreasonable results). We conclude that Brashear is entitled to the benefit of § 108(c) with respect to her claims against Victoria Gardens and Mauer if the automatic stay barred her from proceeding on those claims.

██ Ordinarily, an automatic stay does not apply in favor of nondebtors like Victo-

ria Gardens and Mauer, even if they are codefendants, co-debtors, or co-tortfeasors with a bankrupt debtor. *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 604 (Tex.2000) (per curiam). We have said that the automatic stay applies in favor of nondebtors only in "very limited circumstances." *Cissne v. Robertson,* 782 S.W.2d 912, 924 (Tex.App.-Dallas 1989, writ denied). We have further said that, to take advantage of the automatic stay, a nondebtor must demonstrate either (1) that there is such an identity between the debtor and the nondebtor that the debtor could be said to be the true defendant and a judgment against the nondebtor would be, in effect, a judgment or finding against the debtor, or (2) that extending the stay for the benefit of the nondebtor would contribute to the debtor's rehabilitation efforts. *Hoover v. Hooker,* No. 05–00–00268–CV, 2002 WL 1462210, at *2 (Tex.App.-Dallas July 9, 2002, no pet.) (not designated for publication); *accord Bamburg v. Townsend,* 35 S.W.3d 85, 89 (Tex.App.-Texarkana 2000, no pet.).

*Hoover* and *Bamburg* demonstrate that the determination of whether the automatic stay applies to claims against nondebtors involves factual considerations, so we look to the record to see whether the trial court made any determination of the issue. Brashear and appellees dispute whether the trial court found that the automatic stay applied in favor of Victoria Gardens, Mauer, and RainTree's other codefendants. We agree with Brashear that the court did make such a finding. In its motion to enforce automatic bankruptcy stay, RainTree specifically asked the trial court to rule that the stay applied in favor of all defendants. RainTree argued that the stay applied in favor of all defendants because any judgment against its codefendants would have res-judicata effects against it, and because any findings against its codefendants would have collat-

eral-estoppel effects against it. One of the court's September 3, 2002 orders recites, "The Court further finds, as a result of the bankruptcy of Defendant RainTree … that this action should be stayed pursuant to 11 U.S.C. § 362 until further order of this Court." The other order similarly recites that the court "finds this action should be stayed pursuant to 11 U.S.C. § 362 until further order of this Court." Notably, the court twice recited that it was staying the entire action "pursuant to 11 U.S.C. § 362"—not that it was staying the claims against RainTree under § 362 and the claims against the other defendants in the interest of judicial economy or some other reason. The most reasonable reading of the orders is that the trial court concluded that the automatic stay imposed by § 362 applied in favor of all of the defendants, including appellees.

■ Next, Brashear and appellees dispute whether we must accept the correctness of the trial court's application of the automatic stay. Brashear asserts that we must accept the correctness of that ruling for several reasons, one of which is the fact that no party challenged that order when it was made. We agree. For appellees to be entitled to challenge the trial court's order, "the record must show" that they objected to the trial court's action and obtained a ruling on that objection. Tex. R.App. P. 33.1(a). The record in this case does not show any such objection. Appellees agreed "as to form" to one of the orders containing the automatic-stay language, and as far as our record reveals they were otherwise silent on the subject. We conclude that it would be unfair to allow appellees to challenge the trial court's determination for the first time on appeal when Brashear may have relied on that determination in calculating her appellate deadlines. Appellees should have challenged the determination in the trial

court so as to put Brashear on notice that there was disagreement as to the true procedural posture of the case. Accordingly, we must accept the correctness of the trial court's application of the automatic stay.

### 3. Effect of the January 2005 dismissal of Brashear's claims against RainTree

■■■■ Both appellees argue that any tolling or extending effect under the bankruptcy code ceased in January 2005 when the trial court signed an agreed order dismissing all claims against RainTree with prejudice. We disagree. We have held above that the extension provided in § 108(c) applies whenever an automatic stay blocks a claimant from continuing to prosecute a claim against a particular defendant. Appellees' argument thus has merit only if the dismissal of RainTree somehow had the effect of lifting the automatic stay as to the remaining defendants in the case. Appellees have referred us to no authority in support of that proposition, and the only relevant authority we have found supports the contrary position. *See Lovall v. Chao,* No. 01–02–01019–CV, 2005 WL 110372 (Tex.App.-Houston [1st Dist.] Jan. 20, 2005, no pet.) (mem. op.) (holding that automatic stay protected nondebtor wife of bankrupt debtor, even though debtor himself was not sued). The trial court never withdrew or modified its finding that the automatic stay applied to the entire case. Accordingly, we conclude that § 108(c) applied to the entire case and gave Brashear a thirty-day extension to act that began to run from the termination of RainTree's bankruptcy and the coincident termination of the automatic stay.

### D. Conclusion

We conclude that § 108(c) extended Brashear's appellate deadline until thirty days after notice of the termination of RainTree's bankruptcy proceeding with respect to her claims against the defendants who were protected by RainTree's automatic bankruptcy stay. We further conclude that the trial court determined that the automatic stay protected all of the defendants in this case, and we must accept the correctness of this determination for purposes of determining our appellate jurisdiction. Accordingly, we conclude Brashear's notice of appeal was timely as to all defendants pursuant to § 108(c) of the bankruptcy code, giving us jurisdiction to consider this appeal.

### III. SUBJECT-MATTER JURISDICTION

■■■■ Appellees argue that if the automatic stay applied in favor of all of the defendants in this case, then the stay deprived the trial court of the subject-matter jurisdiction to take any action in this case other than to dismiss for lack of jurisdiction. They further argue that we lack jurisdiction because the trial court lacked jurisdiction, and therefore we must dismiss. We must consider the question of subject-matter jurisdiction even though raised for the first time on appeal. *McMahon Contracting, L.P. v. City of Carrollton,* 277 S.W.3d 458, 463 (Tex.App.-Dallas 2009, pet. denied).

The automatic-stay provision of the bankruptcy code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... the commencement" of a judicial action against the debtor for a claim that arose prepetition. 11 U.S.C. § 362(a). The Texas Supreme Court has twice said that actions taken in violation of an automatic stay are void. *Howell v. Thompson,* 839 S.W.2d 92, 92 (Tex.1992) (holding appellate court judgment void); *Cont'l Casing Corp.,* 751 S.W.2d at 501 (holding party's assertion of offset against account owed to bankrupt debtor void). In our only precedential

opinion since *Howell*, we have reaffirmed that acts that violate the automatic stay are void. *Stephens*, 216 S.W.3d at 529; *accord Raney v. Hall*, No. 05–98–00436–CV, 2000 WL 567054, at *1 (Tex.App.-Dallas May 4, 2000, no pet.) (not designated for publication); *see also* 3 COLLIER ON BANKRUPTCY ¶ 362.11[1] (15th ed. revised 2009) (arguing that the better approach is to treat acts that violate the stay as void rather than voidable).

Other courts of appeals have construed the rule of voidness to mean that the trial court acquires no jurisdiction over an action commenced in violation of the automatic stay. *See, e.g., York v. State*, 298 S.W.3d 735, 745 (Tex.App.-Fort Worth 2009, pet. filed) ("The automatic stay deprives state courts of jurisdiction over proceedings against the debtor, and any action taken against the debtor while the stay is in place is *void* and without legal effect."); *Lovall*, 2005 WL 110372, at *2 ("The bankruptcy stay deprives state courts of jurisdiction over the debtor and his property until the stay is lifted or modified. Therefore, any subsequent judicial proceedings taken against the debtor that are in violation of the automatic stay are void, not merely voidable.") (citations omitted); *Padrino Maritime, Inc. v. Rizo*, 130 S.W.3d 243, 246 (Tex.App.-Corpus Christi 2004, no pet.) ("The automatic stay deprives a state court of jurisdiction over the debtor."); *accord Barton–Malow Co. v. Gorman Co. of Ocala, Inc.*, 558 So.2d 519, 521 (Fla.Dist.Ct.App.1990) (trial court did not acquire jurisdiction over third-party defendant because third-party complaint was filed after third-party defendant filed for bankruptcy); *Cohen v. Salata*, 303 Ill.App.3d 1060, 237 Ill.Dec. 413, 709 N.E.2d 668, 671–72 (1999) (complaint filed in violation of an automatic stay is void and does not invoke the trial court's jurisdiction).

Although not binding precedent, our decision in *Raney* is similar and instructive. In that case, Raney sued three defendants, all of which were apparently in bankruptcy at the time. 2000 WL 567054, at *1. The defendants won a judgment in the trial court based on motions for summary judgment and motions to dismiss, and Raney appealed. *Id.* On appeal, we followed the supreme court's pronouncements that "[a]cts taken in violation of the automatic stay are void and without legal effect." *Id.* Because Raney sued the defendants during the automatic stay, his lawsuit "was void and did not vest the trial court with jurisdiction." *Id.* "Thus, the trial court had no jurisdiction to enter a final order ... dismissing this lawsuit with prejudice." *Id.* Accordingly, we reversed the trial court's judgment and remanded with instructions to dismiss the case for lack of jurisdiction. *Id.* The *Lovall* case is also very similar. The plaintiff filed a forcible detainer action against a woman whose husband was in bankruptcy at the time. 2005 WL 110372, at *1. The plaintiff won a judgment in the justice court, then won again on appeal to the county court. *Id.* When the bankruptcy was brought to the attention of the court of appeals, the court held (1) that the automatic stay also applied in favor of the debtor's wife, and (2) that the lower court judgments were void for lack of jurisdiction. *Id.* at *1–3. The court of appeals declared the county-court judgment void and dismissed the appeal. *Id.* at *3.

Like all courts, the trial court possessed jurisdiction to determine its own subject-matter jurisdiction. *See Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex.2007) ("Courts always have jurisdiction to determine their own jurisdiction."). In the course of the proceedings, the court determined that, based on the facts of the case, all defendants were entitled to the benefit of the

automatic stay. Bound by that determination, we conclude that federal bankruptcy law deprived the trial court of subject-matter jurisdiction over this lawsuit *ab initio*.

## IV. DISPOSITION

We reverse the trial court's final judgment dismissing this case for want of prosecution and remand this cause to the trial court with instructions to dismiss it for lack of jurisdiction.