**Opinion issued May 11, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00277-CV**

———————————

**GYANENDRA PATRA, Appellant**

**V.**

**CLARE SCHOENE AND ADAM E. HAMPTON, Appellees**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 20-DCV-271333**

---

## MEMORANDUM OPINION

Appellees Clare Schoene and Adam E. Hampton obtained an agreed injunction against appellant Gyanendra Patra that prevented him from contacting Schoene and Hampton and from coming with a certain distance of them, their house,

and Schoene's place of employment. Patra allegedly violated the agreed injunction, and Schoene and Hampton sought to hold him in criminal contempt. After an evidentiary hearing, the trial court found Patra in contempt, ordered him to spend 75 days confined in the Fort Bend County Jail, and ordered him to undergo a psychological evaluation.

In three issues, Patra contends that (1) the evidence in the record is factually insufficient to support the trial court's contempt order; (2) the trial court abused its discretion by denying Patra's pretrial motions and special exceptions; and (3) the trial court abused its discretion by assessing Patra's punishment for contempt at 75 days' confinement.

We dismiss the appeal for want of jurisdiction.

**Background**

Schoene is a Project/Engineer Manager at Schlumberger, and part of her job description includes hiring personnel for the projects that she oversees. In March 2019, Schoene hired Patra. Their working relationship quickly deteriorated as Patra began making inappropriate comments concerning the pursuit of a romantic relationship with Schoene and engaging in other behaviors that Schoene found harassing and unwelcome.

Schoene reported Patra's behavior to Schlumberger's Human Resources Department. After an investigation, Schlumberger terminated Patra's employment

2

in September 2019. Patra, however, continued sending Schoene harassing emails, text messages, and voicemails. Schoene also saw Patra while she was at a restaurant with her husband, Hampton, and while she was at a park with her minor children. Schoene believed that Patra had been following her.

In February 2020, Schoene and Hampton filed suit against Patra and asserted causes of action for stalking, intentional infliction of emotional distress, private nuisance, and tortious interference with business relations. Schoene and Hampton also sought injunctive relief. They requested a temporary restraining order, a temporary injunction, and a permanent injunction that, among other things, enjoined Patra from communicating with them or coming within 500 feet of Schoene and Hampton, their home, and Schoene's place of employment. The trial court granted a temporary restraining order and notified Patra of the date the court would hear Schoene's application for a temporary injunction.

On March 6, 2020, the trial court signed an Agreed Final Judgment and Injunction ("Agreed Injunction"). The Agreed Injunction prohibited Patra from contacting or communicating with Schoene, Hampton, and several named individuals who worked at Schlumberger with Schoene. It also prohibited Patra from coming within 500 feet of Schoene and Hampton, their home, and Schoene's place of employment. The Agreed Injunction stated that it would expire three years after

3

the date of the order "should [Patra] comply with the terms and conditions of this Order."

Three months later, in June 2020, Schoene and Hampton moved for a show cause hearing. They alleged the following violations of the Agreed Injunction:

- On April 20, 2020, Patra contacted one of Schoene's co-workers.

- On May 28, 2020, while Schoene was walking outside with her children, she saw Patra sitting in a car at an intersection less than 500 feet from her home.

- Later that night, Patra contacted Schoene by text message and sent her a link to a video of a romantic song.

- On June 6, 2020, Patra viewed Schoene's LinkedIn profile and, after she blocked him from viewing her profile, he sent her an email.

- On June 18, 2020, Hampton saw a car registered to Patra's wife parked within 500 feet from his home.

Schoene and Hampton requested that the trial court hold Patra in criminal contempt for these alleged violations of the Agreed Injunction.

In July 2020, the trial court held a hearing on whether Patra violated the Agreed Injunction and whether he should be held in contempt. After the hearing, the court signed an order finding that Patra had violated the Agreed Injunction in seven ways and that Patra had failed to show good cause for the violations ("the First Contempt Order"). The court ordered that Patra be held in contempt. The court ordered Patra to "be placed into confinement for the term of forty-five (45) days in

4

the Fort Bend County Jail." The court further ordered Patra to turn himself into the Fort Bend County Jail on July 20, 2020.

Patra challenged the First Contempt Order in an original habeas corpus proceeding in this Court. *See In re Patra*, No. 01-20-00651-CV, 2020 WL 7502495 (Tex. App.—Houston [1st Dist.] Dec. 22, 2020, no pet.) (mem. op.). Patra argued that the First Contempt Order was void because the trial court forced him to be sworn and called as a witness in violation of his Fifth Amendment right against self-incrimination. *Id.* at \*2. He further argued that by requiring him to show good cause for his alleged violations of the Agreed Injunction, the trial court improperly shifted the burden of proof to him on the element of whether he willfully intended to violate the Agreed Injunction. *Id.* at \*3. A panel of this Court overruled both arguments. *See id.* at \*2–3. We noted that Patra did not challenge the trial court's finding that he had violated the Agreed Injunction. *Id.* at \*3.

Patra also argued that the First Contempt Order violated his due process rights because the commitment portion of the order did not direct the Fort Bend County Sheriff to detain him. *Id.* at \*3–4. We agreed with Patra, concluding that because the First Contempt Order did not "contain a directive to the sheriff to take Patra into custody" and instead "direct[ed] Patra to turn himself into the county jail," the order "cannot serve as a commitment order." *Id.* at \*4. "[W]ithout an order of commitment, Patra is not validly confined." *Id.* We granted Patra's application for a writ of habeas

5

corpus, vacated the trial court's contempt and commitment order, and ordered Patra discharged from custody. *Id.* at \*1, 5.

Shortly after our opinion issued, in January 2021, Schoene and Hampton again filed a motion for a show cause hearing. They alleged the same violations of the Agreed Injunction that led to the trial court entering the First Contempt Order. They also alleged, in this motion and in two supplemental motions, three new violations of the Agreed Injunction:

- On January 5, 2021, Hampton, while out with his children, saw Patra's vehicle parked within 500 feet of his and Schoene's house.

- On January 14, 2021, Schoene, Hampton, and their children were in their car waiting to turn into their driveway when Hampton saw Patra drive past in his vehicle.

- On February 7, 2021, Hampton and one of his children had just left their house in their car when Hampton saw Patra driving his vehicle. Patra sped away and nearly hit one of Hampton's neighbors, who was waiting to turn into his driveway.

In these motions, Schoene and Hampton again requested that the trial court hold Patra in criminal contempt.

Patra moved for a partial dismissal of the contempt proceedings against him based on the prohibition against double jeopardy. Specifically, Patra requested dismissal of the allegations that had led to the First Contempt Order. Patra argued that jeopardy had attached to those allegations when the trial court held a show cause hearing in July 2020, but this Court ultimately overturned the trial court's criminal

6

contempt findings based on those allegations. Patra argued that because "double jeopardy had already attached, Plaintiffs are not allowed to proceed with those same allegations herein a second time."

The trial court held a show cause hearing in May 2021. Before the court heard testimony, the court denied Patra's motion to dismiss based on double jeopardy. Several witnesses then testified, including Schoene, Hampton, Patra, Hampton's neighbor, and a private investigator.

After the hearing, the trial court signed an order holding Patra in contempt ("Second Contempt Order"). The court found that Patra violated the Agreed Injunction in eight ways: (1)–(2) he violated the distance requirements by appearing within 500 feet of Schoene's home and person on May 28, 2020; (3) he violated the no-contact requirement by sending Schoene a text message on May 28, 2020; (4) he violated the no-contact requirement by sending Schoene an email on June 6, 2020; (5)–(6) he violated the distance requirements by appearing within 500 feet of Schoene's home and Hampton's person on June 18, 2020; (7) he violated the distance requirements by appearing within 500 feet of Schoene, Hampton, and their home on January 14, 2021; and (8) he violated the distance requirements by appearing within 500 feet of Schoene, Hampton, and their home on February 7, 2021. The court further found that Patra had failed to show good cause for any of the violations.

The trial court ordered that Patra be confined in the Fort Bend County Jail for 75 days. The court also signed an order of commitment. The court further ordered that Patra undergo a psychological evaluation.

Patra filed a notice of appeal seeking to appeal the Second Contempt Order, the commitment order, and the order for a psychological evaluation.[1]

## Appellate Jurisdiction

As an initial matter, we must address our appellate jurisdiction. Schoene and Hampton argue that we lack jurisdiction over this appeal because Patra attempts to appeal from a criminal contempt order, and such orders are reviewable only via a writ of habeas corpus. We agree.

### A. *Standard of Review*

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is not presumed and cannot be waived by the parties. *Id.* at 445. Likewise, appellate jurisdiction is never presumed. *Jack M. Sanders Fam. Ltd. P'ship v. Roger T. Fridholm Revocable, Living Tr.*, 434 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Brashear v. Victoria Gardens of*

---

[1] The trial court granted Patra's request for an appeal bond. The court required Patra to post bond in the amount of $200; required Patra to wear an ankle monitor; prohibited Patra from contacting Schoene or Hampton or going within 500 feet of their home or offices; imposed a 7 p.m. weekday curfew on Patra; and imposed home confinement on Patra for the weekends.

*McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex. App.—Dallas 2009, no pet.)). Unless the record affirmatively demonstrates that we have appellate jurisdiction over a case, we must dismiss the appeal. *Id.* (quoting *Brashear*, 302 S.W.3d at 546). We are therefore obligated to determine our jurisdiction when either the parties or the circumstances of the appeal call it into question. *Id.*

## B.    *Appellate Jurisdiction Over Criminal Contempt Orders*

A contempt order can be either civil or criminal. *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). The distinction between civil and criminal contempt does not depend on whether the underlying litigation is civil or criminal; instead, the key is the nature of the punishment imposed by the court. *Id.* Civil contempt is "remedial and coercive in nature," and the contemnor's confinement "is conditioned on obedience with the court's order." *Id.* (quoting *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding)); *In re Bannwart*, 439 S.W.3d 417, 421 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (stating that purpose of civil contempt is to coerce contemnor to comply with order of court). Criminal contempt, by contrast, "is punitive in nature," and the contemnor's confinement is punishment "for some completed act which affronted the dignity and authority of the court." *In re Reece*, 341 S.W.3d at 365 (quoting *Ex parte Werblud*, 536 S.W.2d at 545); *Luttrell v. El Paso Cnty.*, 555 S.W.3d 812, 828–29 (Tex. App.—El Paso 2018, no pet.).

Contempt orders are not reviewable by appeal, even if they are appealed along with a judgment that is appealable. *In re Roisman*, 651 S.W.3d 419, 433 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding); *Cline v. Cline*, 557 S.W.3d 810, 812 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Instead, contempt orders are reviewable only by petition for writ of mandamus or habeas corpus. *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) (per curiam); *In re Roisman*, 651 S.W.3d at 433. The contempt judgment may be challenged by petition for writ of habeas corpus if the contemnor is confined, or by petition for writ of mandamus if no confinement is involved. *In re Off. of Att'y Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, no pet.); *In re Janson*, 614 S.W.3d at 727 ("When the contemnor is not jailed, the proper vehicle to challenge a contempt order is a writ of mandamus . . . .").

In the Second Contempt Order, the trial court found that Patra violated the Agreed Injunction in eight ways and ordered Patra confined in the Fort Bend County Jail for 75 days. Because the Second Contempt Order ordered Patra to be confined,[2]

---

[2]  Although the trial court granted Patra's request for a bond pending this appeal, the court imposed additional conditions on Patra: he was required to wear an ankle monitor, he had a 7 p.m. curfew on weeknights, and he was placed under home confinement on weekends. These are restraints on Patra's liberty. We conclude that Patra is "confined," and therefore the appropriate avenue for challenging the Second Contempt Order is via a petition for writ of habeas corpus, not a petition for writ of mandamus. *See Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985) (noting that contemnor's liberty was restrained even though contemnor was out on bond because "his bond could be revoked at any time, resulting in his incarceration"); *see also In re Roisman*, 651 S.W.3d 419, 434 (Tex. App.—Houston [1st Dist.] 2022, orig.

the proper vehicle to challenge this order is by petition for writ of habeas corpus. *See In re Janson*, 614 S.W.3d at 727; *In re Off. of Att'y Gen. of Tex.*, 215 S.W.3d at 916. Patra, however, did not invoke this Court's original jurisdiction by filing a petition for writ of habeas corpus. Instead, he filed a direct appeal of the Second Contempt Order. We conclude that we lack appellate jurisdiction to review the Second Contempt Order by direct appeal.[3]

---

proceeding) (noting that contempt order was challengeable by writ of mandamus when trial court suspended contemnor's jail commitment conditioned on subsequent payment of child support arrearages and attorney's fees); *In re Honermann-Garinger*, No. 02-10-00361-CV, 2010 WL 4644464, at \*4 (Tex. App.—Fort Worth Nov. 17, 2010, orig. proceeding) (mem. op.) (concluding that contempt order did not confine or restrain contemnor because court suspended contemnor's jail commitment and ordered her to pay attorney's fees and comply with court order).

[3]  This Court has previously held that, "in an appropriate case," we may treat an appeal as an original proceeding, and an appellant who specifically requests that his appeal be treated as an original proceeding invokes our original jurisdiction. *See Jones v. Brelsford*, 390 S.W.3d 486, 497 n.7 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (declining to treat appeal as petition for writ of mandamus when appellant did not request—either in original brief or in response to motion for rehearing—that issue be construed as request for mandamus relief if Court determines that issue is outside scope of interlocutory appellate jurisdiction); *In re D & KW Fam., L.P.*, No. 01-11-00276-CV, 2012 WL 3252683, at \*4 (Tex. App.—Houston [1st Dist.] Aug. 9, 2012, orig. proceeding) (mem. op.) (construing appeal as petition for writ of mandamus when appellant specifically requested mandamus relief and "submitted a document in the form of a petition for writ of mandamus"). Here, although Schoene and Hampton raised the jurisdictional defect in their appellee's brief, Patra has not requested that we construe this appeal as a petition for writ of habeas corpus. We therefore decline to do so.

## Conclusion

We dismiss the appeal for lack of jurisdiction.

## PER CURIAM

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.