Opinion issued August 30, 2012.



In The

# Court of Appeals

For The

# First District of Texas

————————————————

NO. 01-11-00265-CV

NO. 01-11-00266-CV

————————————————

**DIANNA JONES, Appellant**

**V.**

**HAROLD PETSCH BRELSFORD, SUSANNA MELISSA BRELSFORD, JOHN PETSCH BRELSFORD, GEORGANNA BRELSFORD, EDYTH BRELSFORD, JEFFERSON BRELSFORD, AND JOSEPH BRELSFORD, Appellees**

---

On Appeal from the Probate Court No. Two
Harris County, Texas
Trial Court Cause Nos. 380,313-401 and 380,313-402

---

**OPINION ON REHEARING**

In this dispute with her siblings—Harold Brelsford, Susanna Brelsford, and John Brelsford—over the division of their deceased parents' estates, Dianna Jones brings an interlocutory appeal of the probate court's orders (1) denying confirmation of an arbitration award in her favor and instead, vacating the award and (2) appointing a new arbitrator. Because the arbitration award also affected the property interests of another of Dianna's siblings, Georganna (Madge) Brelsford, and three of the decedents' grandchildren, Edyth Brelsford, Jefferson Brelsford, and Joseph Brelsford, they are also parties to the appeal. We previously issued an opinion and judgment affirming the vacatur of the arbitration award, reversing the appointment of a new arbitrator, and remanding for further proceedings. Harold, Susanna, and John have moved for rehearing on the ground that we lack jurisdiction to review the appointment of a new arbitrator. After review of the argument and authorities cited in the rehearing motion, we agree with Harold, Susanna, and John. Accordingly, we grant the rehearing motion to explain the scope of our jurisdiction under section 171.098 of the Texas Civil Practice and Remedies Code,[1] withdraw our prior opinion and judgment, and substitute the following in their stead.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a) (West 2011) (listing five arbitration-related orders from which parties may have interlocutory appeal).

## Background

Harold John Brelsford had five children—Harold, Susanna, John, Dianna, and Madge—and four grandchildren—Edyth, Jefferson, Joseph, and Currie. Upon Harold John's death, his children and grandchildren inherited interests in certain family properties, including a ranch and an apartment complex. Three of the children—Harold, Susanna, and John—filed two lawsuits against their father's estate: one in their individual capacities and one as co-trustees of family trusts they alleged their father had mismanaged.[2] Dianna and Madge joined these lawsuits as necessary parties. One of the grandchildren, Currie, also participated as a co-executor of the estate; however, the remaining three grandchildren, who were not beneficiaries of the trusts, did not participate. At some point during the pendency of the lawsuits, joint ownership of the ranch and apartments became problematic, and the parties were sent to mediation before the Honorable Carolyn Garcia.

At mediation, the parties reached settlement. The estate, Harold, Susanna, John, Dianna, and Madge signed a document titled "Mediated Settlement Agreement" (MSA), attached to which were terms and additional agreements. In

---

[2] The parties have treated the two underlying lawsuits as having been consolidated by the probate court. These two lawsuits were assigned separate cause numbers in this Court, Nos. 01-11-00265-CV and 01-11-00266-CV. Dianna filed an unopposed motion to consolidate the appeal, and we granted the parties leave to file a single record for both cases. When we set these cases for submission, we informed the parties that we would consider the two appeals together and consider the briefing filed in No. 01-11-00265-CV as having been filed in 01-11-00266-CV. No party objected to this manner of submission.

the MSA, the estate agreed to transfer certain interests in the ranch and the apartments to Harold, Susanna, and John as co-trustees of the family trusts and to Edyth, Jefferson, and Joseph individually (these three, to the exclusion of Currie, are referred to hereinafter collectively as the "grandchildren"). Upon execution of the settlement, the estate was relieved of any and all management responsibility, right of control, and liability for the ranch and the apartments. The MSA also provided that "any dispute as to interpretation of terms of this agreement shall be submitted to binding arbitration with [Judge] Garcia as mediator."

Most relevant to this appeal are the two additional agreements attached to the MSA, each of which is two-pages in length. The first agreement is between (1) Dianna and (2) Harold, Susanna, and John. The second agreement is between (1) Madge and (2) Harold, Susanna, and John. Dianna and Madge individually agreed to transfer their interests in family properties, including the ranch, to Harold, Susanna, and John in exchange for payment. Other than the parties' names, these agreements contain identical terms describing the amount and method of payment as follows:

> At the closing of the transaction contemplated by this Mediation Agreement, [Harold, Susanna, and John] shall deliver a cashier[']s check in the amount of $15,000 together with a promissory note (the "Note") in the principal amount of $480,000. The Note shall bear interest at 6% per annum, and [Harold, Susanna, and John] shall make monthly payments of interest only on the unpaid balance to [Dianna or Madge, accordingly], over a 12 month period. Monthly payments shall commence on January 1, 2010 and shall be due and payable on

4

the first of the month thereafter. A balloon payment of all remaining
principal and interest amounts due shall be paid on January 1, 2011.

A first lien deed of trust on the ranch secured the note to Dianna, and a first lien
deed of trust on the apartments secured the note to Madge.

The agreements further provide for an identical two-step process in the event
of future disputes: "attend a ½ day mediation with Judge Garcia; if no agreement,
then Judge Garcia shall serve as arbitrator, and she shall rule in a manner that she
believes is fair and just, and her decision is non-appealable and final." If Judge
Garcia was unwilling or unable to serve, then a new arbitrator would be "chosen by
unanimous consent of the parties." Failing the parties' agreement, they would
petition the "Administrative Judge of Harris County" for appointment of a new
arbitrator.

The five siblings thereafter disagreed about the terms of portions of the
MSA, and they, along with the estate, participated in further mediation. That
mediation resulted in certain agreed clarifications for performance of the MSA but
did not resolve all the parties' disputes. Consequently Judge Garcia, acting in her
role as arbitrator, decided the remaining matters and issued the first arbitration
award in this case. That arbitration award is not the subject of this appeal.

When Harold, Susanna, and John failed to make the payment due under their
agreement with Dianna, Dianna demanded a second mediation and arbitration. In
her demand letter, Dianna requested enforcement of her rights under her agreement

5

with Harold, Susanna, and John, "including without limitation, judicial foreclosure and/or damages for breach of contract." A dispute arose between the parties as to the scope of the arbitrator's authority in the second arbitration, and Dianna, Harold, Susanna, and John submitted the issue to the probate court. Before the hearing in the probate court, however, the parties agreed to the following order giving the arbitrator broad authority to decide their dispute:

> Dianna Jones on the one hand, and Susanna Brelsford, Harold Petsch Brelsford and John Brelsford in their individual [c]apacities on the other hand, collectively referred to as (the "Parties"), agreed to enter into this Agreed Order as to the following. Therefore it is:

> ORDERED, ADJUDGED AND DECREED that the Parties shall submit to full merits arbitration of any and all issues and/or disputes related to the above causes of action and any and all issues or disputes with regard to any mediation agreement and/or settlement agreement executed by and between the Parties. The Honorable Carolyn Garcia shall serve as arbitrator and shall have full authority to rule and issue orders as to any and all issues and/or disputes related to the above causes of action and any and all issues or disputes with regard to any mediation agreement and/or settlement agreement executed by and between the Parties.

The agreed order did not refer to and was not signed by Madge or the grandchildren or Harold, Susanna, and John in their capacities as co-trustees.

On the eve of arbitration, Dianna and Harold, Susanna, and John exchanged their written submissions to the arbitrator. According to Harold, Susanna, and John, Dianna unfairly made the following "dramatic" changes to her claims:

- She asked the arbitrator to give her full ownership of the ranch, as opposed to the security interest granted as part of the settlement;

6

- She complained that Harold, Susanna, and John "intended from the start to defraud" her and sought damages for fraud;

- She asked for specific performance and $300,000 from Harold, Susanna, and John as a "punitive measure";

- She requested a preference in selecting her portion of other property (the "Llano property") as additional punishment;

- She asked for an accounting; and

- She accused Harold, Susanna, and John of converting funds from the ranch and the apartments and asked for an order of disgorgement of those funds.

Harold, Susanna, and John verbally requested postponement of the arbitration when the parties convened the next morning, but the arbitrator denied their request. The parties proceeded with arbitration.[3]

After a full hearing with sworn testimony, exhibits, and arguments of counsel, the arbitrator found that Harold, Susanna, and John had repeatedly and intentionally breached their settlement with Dianna by failing "to make best efforts to sell [the ranch] so the proceeds would be used to pay Dianna and Madge" and by failing to sign documents necessary to the "closing of the partition that began

---

[3]     Neither Madge nor the grandchildren participated in the second arbitration. The award states that Madge was "informed of the mediation and arbitration and chose not to attend or participate in the arbitration as [she] reported settling any disputes with Harold, Susanna, and John." With respect to the grandchildren, the order recites that they "personally and in writing to the [arbitrator], unconditionally authorized their parents to act in their behalf on all matters related to these estates, mediation and arbitration."

with the MSA." The arbitrator also found that Harold, Susanna, and John had fraudulently induced Dianna to enter the MSA and that their conduct warranted sanctions and punitive damages. With respect to damages, the arbitrator determined that Dianna was entitled to $1,056,000 in actual and punitive damages—specifically, "$456,000 on the [promissory] note, plus accrued interest; $250,000 in actual damages; and $350,000 in punitive damages and sanctions." (Emphasis omitted). Having already found that the market value of the ranch at the time of the MSA was "just over $1 million dollars" and that Harold, Susanna, and John "still [did not have] funds or a commitment for funds to pay the note," however, the arbitrator determined,

> [I]t is equitable that [the ranch] be awarded in fee simple as an exchange or partition in kind, and awarded to Dian[n]a in satisfaction of the debt and other damages found and awarded[.]
>
> All claims and losses raised in Arbitration by Dian[n]a will be paid in full and released by the transfer of [the ranch] to Dianna in this equitable disposition, except for attorney fees and costs.

(Emphasis omitted). To give effect to the award, the arbitrator ordered that Harold, Susanna, John, and Madge "shall each execute the deeds . . . to transfer full ownership of [the ranch], its cattle and improvements to Dian[n]a[.]"[4] (Emphasis omitted).

---

[4]     We note that, in both the probate court and in this Court, the parties have asserted that the arbitrator awarded Dianna (1) the debt outstanding under the MSA, (2) additional actual damages, (3) punitive damages and sanctions, and (4) the ranch.

Dianna sought confirmation of the arbitration award in the probate court, but Harold, Susanna, John, Madge, and the grandchildren all filed motions to vacate. Harold, Susanna, and John's motion alleged three statutory vacatur grounds: the arbitrator (1) refused to grant a continuance after a showing of sufficient cause for postponement of the arbitration hearing, (2) exceeded her power, and (3) refused to hear material evidence. By separate motion, Harold, Susanna, and John also requested appointment of a new arbitrator on the ground that the arbitrator's actions during the second arbitration called into question her ability to fairly resolve the parties' disputes. In their motions to vacate, Madge and the grandchildren asserted, among other things, that they had not agreed to arbitrate and that the arbitrator exceeded her powers by divesting them of their interests in the ranch.

No record of the arbitration proceeding was presented to the probate court. Instead, the parties submitted the agreements to arbitrate, the written submissions to the arbitrator, the arbitration award, and the post-arbitration affidavits of their attorneys recounting what had occurred during the proceeding. After an oral hearing, the probate court denied confirmation of the arbitration award and instead,

The arbitration award cannot be read in the manner asserted by the parties. Although the arbitrator determined Dianna was entitled to all of those things, she clearly and unequivocally awarded Dianna the ranch "in satisfaction of the debt and other damages found and awarded." (Emphasis omitted). We do not read the arbitration award to impose upon Harold, Susanna, and John the obligation to pay the amounts awarded as actual, additional, or punitive damages.

vacated the award in its entirety. The same day, the probate court granted Harold, Susanna, and John's motion to appoint a new arbitrator "to hear any present or future disputes arising out of" the MSA; Dianna's agreement with Harold, Susanna, and John; and Madge's agreement with Harold, Susanna, and John. Dianna seeks immediate appellate review of the trial court's orders.

**Judicial Review of Arbitration Awards**

Texas law favors the arbitration of disputes. *See E. Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *Brazoria Cnty. v. Knutson*, 176 S.W.2d 740, 743 (Tex. 1943) ("Arbitration is a proceeding so favored by Texas law that both our Constitution and statutes provide for the submission of differences to arbitration."). Consequently, judicial review of an arbitration award is extraordinarily narrow and focuses on the integrity of the process, not the propriety of the result. *See Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *TUCO, Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex. App.—Amarillo 1995), *modified on other grounds*, 960 S.W.2d 629 (Tex. 1997). A reviewing court may not substitute its judgment for the arbitrator's simply because that court would have reached a different result. *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We indulge every reasonable presumption to uphold an arbitrator's decision. *New Med. Horizons II,*

*Ltd. v. Jacobson*, 317 S.W.3d 421, 428 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

The parties agree that the Texas General Arbitration Act (TAA) governs. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011). Under the TAA, a court must affirm an arbitration award unless a party establishes one of four statutory bases for vacating the award: (1) the award was procured by fraud, corruption, or other undue means; (2) there was evident partiality, corruption, or willful misconduct by the arbitrator that prejudices the rights of a party; (3) the arbitrator exceeded her power, refused to postpone a hearing on a showing of sufficient cause, or refused to hear material evidence; or (4) "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection."[5] *Id.* §§ 171.087–.088(a); *see Women's Reg'l Healthcare*, 175 S.W.3d at 367. Our review of an order vacating an arbitrator's award for any of these reasons is de novo. *See Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 705 (Tex. App.—Fort Worth 2006, pet. denied).

### Order Denying Confirmation and Vacating Arbitration Award

Dianna's complaints about the probate court's order vacating the arbitration award are divided into six sub-issues, each addressing a vacatur ground asserted by

---

[5] Subchapter B governs motions and proceedings to compel or stay arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021–.026 (West 2011).

11

her siblings—Harold, Susanna, John, and Madge—or the grandchildren. We begin with Dianna's sixth sub-issue—which challenges the vacatur grounds asserted by Madge in her motion attacking "the portions of the arbitration award that require Madge to sign over her interests in real estate to Dianna Brelsford and to appear and sign transfer documents"—because it is dispositive of this appeal.

Madge argues that the arbitrator's award divesting her of a property interest in the ranch subjected her to an arbitration to which she did not agree and in which she did not participate. She asserts that, under these circumstances, the probate court properly vacated the award under sections of the Civil Practice and Remedies Code providing for vacatur if the arbitrator exceeded her powers or if there was no agreement to arbitrate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A), (a)(4). Dianna asserts that Madge's complaints about the arbitration award are merely "ministerial" and "not a basis to vacate" because Madge had already agreed to transfer her interests to Harold, Susanna, and John. We disagree with Dianna.

We look to the parties' various provisions for dispute resolution to determine the arbitrator's authority to order Madge, a non-participant in the second arbitration, to convey her property interest in the ranch to Dianna instead of Harold, Susanna, and John. *See Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co., Inc.*, 164 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2005, no

12

pet.). Attached to the MSA, which is a global document signed by all of the siblings, the trusts, and the estate, are (1) Dianna's agreement with Harold, Susanna, and John and (2) Madge's agreement with Harold, Susanna, and John. The MSA and the attached agreements contain different provisions for dispute resolution. The MSA provided "that any dispute as to interpretation of terms of this agreement shall be submitted to binding arbitration[.]" In the attached agreements, which the parties treat as separate and distinct agreements, Dianna and Madge individually agreed to transfer their interests in family properties, including the ranch, to Harold, Susanna, and John in exchange for payment. They both also agreed to a two-step process in the event of future disputes: "attend a ½ day mediation with Judge Garcia; if no agreement, then Judge Garcia shall serve as arbitrator, and she shall rule in a manner that she believes is fair and just, and her decision is non-appealable and final."

Although Dianna's and Madge's individual agreements incorporated nearly identical terms for resolving their disputes with their siblings, Dianna did not sign Madge's agreement with Harold, Susanna, and John, and Madge did not sign Dianna's agreement with Harold, Susanna, and John. Madge is also not a signatory to the agreement entered on the eve of the second arbitration, granting the arbitrator broad authority to decide "any and all issues and/or disputes related to the above causes of action and any and all issues or disputes with regard to any

13

mediation agreement and/or settlement agreement." Only Harold, Susanna, John, and Dianna signed that agreement. Thus, the only agreement to arbitrate signed by both Dianna and Madge is the agreement to submit to arbitration "*any dispute as to interpretation of terms of*" the MSA between the siblings, the trusts, and the estate.

Considering the written submissions to the arbitrator, we note that Madge did not have a dispute with either Dianna or her other siblings "as to interpretation of terms" of their settlement agreement with the trusts and the estate, and Dianna did not allege any such dispute with Madge. In fact, Dianna did not allege *any* dispute with Madge or *any* dispute as to the MSA between the siblings, the trusts, and the estate. Although she requested an award of the entire ranch, Dianna's written submission focused exclusively on Harold, Susanna, and John's non-performance and alleged fraudulent inducement of her individual settlement agreement with them. The arbitrator specifically noted in the award that Madge did not participate in the second arbitration because she had settled her disputes with Harold, Susanna, and John. The arbitrator found that "an award of 100% of [the ranch] to Dianna is a partition in kind for her debt under the MSA, for actual and punitive damages from the intentional and repeated breaches of the MSA by Harold, Susanna, and John in the breaches described here." The breaches described in the arbitration award related to breaches of Dianna's settlement with Harold, Susanna, and John and no other agreement. To give effect to her award, however,

14

the arbitrator ordered Madge, along with Harold, Susanna, and John, to execute deeds transferring their interests in the ranch to Dianna. No findings were entered against Madge in the award. Nor can we find any evidence in this record that Harold, Susanna, and John paid Madge and therefore were entitled to demand transfer of Madge's interest in the ranch.

Even considering the presumptions in favor of arbitration, we agree with Madge that she did not agree to submit to arbitration of disputes arising from Dianna's agreement with Harold, Susanna, and John. The arbitrator could not order Madge, as part of the second arbitration, to transfer her interest in the ranch to make Dianna whole from Harold, Susanna, and John's breaches of an agreement to which Madge was not a party because any dispute as to Madge's interest in the ranch was not properly before the arbitrator. We are not persuaded that simply because Madge had already agreed to transfer her interests to Harold, Susanna, and John, an order that she transfer her interests to Dianna instead is inconsequential. The arbitrator's award required Madge to perform an act that contravened her settlement with Harold, Susanna, and John and undermined their obligation to pay Madge under that agreement. We therefore conclude that the probate court correctly vacated that part of the award giving Dianna full ownership of the ranch and ordering Madge to "execute the deeds . . . to transfer full ownership of [the ranch], its cattle and improvements to [Dianna]" under section 171.008(a)(4). *See*

15

TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(4) (allowing vacatur when "there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection").

Our conclusion that Madge did not agree to arbitrate the issues decided at the second arbitration renders our consideration of the other vacatur grounds raised by Harold, Susanna, John, and the grandchildren unnecessary. Although we have held invalid only those parts of the arbitrator's award affecting Madge, the entire award must be set aside because, here, the invalid parts of the award are not "distinct and independent" from the remaining parts of the award. *City of Waco v. Kelley*, 309 S.W.3d 536, 551 (Tex. 2010) ("In an appeal from an arbitration award, if a portion of the award is invalid, the other portion will be unaffected only if the two parts are so distinct and independent that the valid part will truly express the judgment of the arbitrator. But if an invalid portion is not severable and distinct so that the remaining valid part of the award truly expresses the arbitrator's judgment, the entire award is void."); *see Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 409 (Tex. 1959). The arbitrator determined that it was equitable that Dianna be awarded 100 percent ownership of the ranch in satisfaction of the amounts owed by Harold, Susanna, and John for their breaches of contract and fraud. To affirm the remaining portions of the award ordering Harold, Susanna, and John to convey

16

their interests in the ranch would be to affirm an award to Dianna of less than 100 percent ownership of the ranch. Such an award is less than what the arbitrator determined was equitable and would not "truly express the arbitrator's judgment." *See Kelley*, 309 S.W.3d at 551. We therefore conclude that the entire arbitration award must be set aside and that Dianna's dispute with Harold, Susanna, and John must be reheard. Accordingly, we overrule Dianna's sixth sub-issue.

## Order Appointing New Arbitrator

We next consider the issue of the identification of the arbitrator who will hear Dianna's dispute with Harold, Susanna, and John. The probate court—in a separate order issued at the same time it vacated the arbitration award in Dianna's favor—appointed a new arbitrator to "hear any present or future disputes arising out of" the MSA and Dianna's and Madge's agreements with Harold, Susanna, and John. In her second issue, Dianna contends that the appointment of a new arbitrator constitutes error. Harold, Susanna, and John respond that error, if any, resulting from the probate court's appointment a new arbitrator is not subject to immediate review. On reconsideration of this issue, we agree that the appointment order is outside the scope of our jurisdiction in this interlocutory appeal.

Generally, an appeal may be taken only from a final judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (West Supp. 2012); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see also Jack B. Anglin Co., Inc. v. Tipps*,

17

842 S.W.2d 266, 272 (Tex. 1992); *Bison Bldg. Materials, Ltd. v. Aldridge*, 263 S.W.3d 69, 73 (Tex. App.—Houston [1st Dist.] 2006), *aff'd on other grounds*, No. 06-1084, 2012 WL 1370859, at *3 (Tex. Apr. 20, 2012). A judgment is final for purposes of appeal "if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann*, 39 S.W.3d at 192−93. The probate court's order appointing a new arbitrator is not a judgment that contains finality language. Nor does it dispose of all claims and parties. In fact, the order contemplates exactly the opposite disposition. By appointing an arbitrator to rehear the parties' "present" dispute as well as to decide any "future" disputes, the order anticipates "continuing resolution through the arbitration process." *Brooks v. Pep Boys Auto. Supercenters*, 104 S.W.3d 656, 660 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Thus, the order is interlocutory, and we must determine whether we are authorized to consider it as part of this appeal.

We have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly confers appellate jurisdiction. *See Stary v. DeBord*, 967 S.W.2d 352, 352−53 (Tex. 1998); *Eichelberger v. Hayton*, 814 S.W.2d 179, 182 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *see also* TEX. CONST. art. V, § 6; TEX. GOV'T CODE ANN. § 22.220 (West Supp. 2012). In section 171.098(a) of

18

the TAA,[6] the Legislature statutorily extended the courts of appeals' jurisdiction to certain types of interlocutory orders relating to arbitration proceedings, specifically:

(a) A party may appeal a judgment or decree entered under this chapter or an order:

(1) denying an application to compel arbitration made under Section 171.021;

(2) granting an application to stay arbitration made under Section 171.023;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1)−(5) (West 2011). Because section 171.098(a) is in derogation of the general rule that only final judgments are appealable, we strictly construe it. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) ("We strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not

---

[6] This is the only applicable statute that could make the trial court's order appointing a new arbitrator appealable. The general Texas statute permitting appeals from interlocutory orders does not include an order appointing a new arbitrator, or any other trial court order relating to arbitration proceedings, as one of those interlocutory trial court orders from which a party may appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1)−(11) (West Supp. 2012) (setting forth eleven types of appealable interlocutory orders).

19

immediately appealable."); *Tex. A & M. Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 841 (Tex. 2007); *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 71 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The appointment order about which Dianna complains is not one of the five appealable orders specifically enumerated in section 171.098(a). Nevertheless, Dianna urges that the appointment order is appealable under the Texas Supreme Court's holding in *East Texas Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267 (Tex. 2010). There, the parties submitted an employment dispute to final and binding arbitration at which the employee prevailed. *Id.* at 268. The trial court, after considering competing motions for confirmation and vacatur of the arbitration award, found that the "the material factual findings in the [a]ward [were] so against the evidence . . . that they manifest[ed] gross mistakes in fact and law." *Id.* at 269. The trial court consequently issued a single order denying confirmation of the arbitration and instead, vacating the award and directing rehearing before a new arbitrator. *Id*. Because section 171.098(a) allows appeals from orders "confirming or denying confirmation of an award" and "vacating an award *without* directing a rehearing" but does not expressly allow appeals from orders vacating an award *and* directing a rehearing, the issues presented for appellate review included the existence of interlocutory jurisdiction. TEX. CIV.

20

PRAC. & REM. CODE ANN. § 171.098(a)(3), (5) (emphasis added); *see Werline*, 307 S.W.3d at 268; *Werline v. E. Tex. Salt Walter Disposal Co., Inc.*, 209 S.W.3d 888, 893−96 (Tex. App.—Texarkana 2006), *aff'd*, 307 S.W.3d at 274. The Court affirmed the existence of jurisdiction, concluding that (1) the order was not "insulated from appellate review expressly conferred under [section 171.098(a)(3)]"—orders denying confirmation of an arbitration award—"merely because the trial court also vacated the award and directed a rehearing," *Werline*, 307 S.W.3d at 270; (2) under circumstances in which the trial court clearly rejects the award in its entirety and is not directing rehearing as a preface to confirmation, a vacatur with rehearing is the equivalent of a denial of confirmation under section 171.098(a)(3), *id.*; and (3) limitations on judicial review of arbitration awards would be "circumvented if re-arbitration could be ordered for reasons that would not justify denying confirmation, and appeal thereby delayed," *id.* at 271.

Contrary to Dianna's suggestion, the *Werline* jurisdictional holding does not compel a conclusion that the probate court's separate appointment order is within the scope of our jurisdiction here. First, the appointment of a new arbitrator was not at issue (or even discussed) in *Werline*. After determining that it had jurisdiction, the court of appeals reversed the vacatur order and rendered judgment confirming the arbitration award, making any issue regarding the appointment of a new arbitrator moot. *Werline*, 209 S.W.3d at 896−901. And the Texas Supreme

21

Court's holding was only a jurisdictional holding; the Court affirmed the court of appeals's judgment confirming the arbitration award without any discussion of the merits. Second, the *Werline* court reasoned that the vacatur order directing a rehearing was subject to interlocutory review because it was, in effect, a denial of confirmation, and the denial of confirmation may be appealed under section 171.098(a)(3). *Werline*, 307 S.W.3d at 270−71. The same is not true here. The probate court's separate appointment order does only one thing: it appoints a new arbitrator. Thus, the appointment order is exactly what it purports to be, and what it purports to be is not an order from which an interlocutory appeal may be had under section 171.098(a). We decline to extend *Werline* to authorize interlocutory appeals from a separate order appointing a new arbitrator. Instead, because our jurisdiction in this interlocutory appeal is endowed by section 171.098(a) and the appointment order is not among the orders listed in that section from which a party can appeal, we conclude on rehearing that we are not statutorily authorized to consider Dianna's complaints regarding the appointment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1)−(5); *cf. CMH Homes v. Perez*, 340 S.W.3d 444, 453−54 (Tex. 2011) (observing that order appointing arbitrator may be subject to mandamus review).[7]

---

[7] We note that in *CMH Homes*, the Texas Supreme Court held that an appellant who filed an appeal from an unappealable order was nevertheless entitled to have its appeal treated as a petition for writ of mandamus because the appellant

Accordingly, we do not reach Dianna's second issue because it is outside the scope of our jurisdiction in this interlocutory appeal.

## Conclusion

We affirm the probate court's order vacating the arbitration award.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

---

specifically requested mandamus relief and because requiring the appellant to file a separate document entitled "petition for writ of mandamus" would "unnecessarily waste the parties' time and further judicial resources." 340 S.W.3d at 543. Thus, in an appropriate case, we may treat an appeal as a petition for writ of mandamus, and an appellant who specifically requests that her appeal be treated as a mandamus petition invokes this Court's original jurisdiction. *See id.*; *see also In re D & KW Family, L.P.*, No. 01-11-00276-CV, 2012 WL 3252683, at *4 (Tex. App.—Houston [1st Dist.] Aug. 9, 2012, orig. proceeding) (mem. op.). Dianna, however, did not invoke our original jurisdiction because she did not request—in either her original briefing or in her response to Harold, Susanna, and John's motion for rehearing—that her issue challenging the appointment of a new arbitrator be construed as a request for mandamus relief should this Court determine that the issue is outside the scope of our jurisdiction in this interlocutory appeal.

23